## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Michael Skidmore, | : | Case No. 04:11CV1760 |
| Petitioner, | : | |
| vs. | : | |
| Bennie Kelly, Warden, | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Respondent. | : | |

### I. INTRODUCTION.

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES.  Pending are Petitioner's Petition under 28 U. S. C. § 2254 for Writ of Habeas Corpus, Respondent's Return and Petitioner's Traverse (Docket Nos. 1, 7 & 14).  For the reasons that follow, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

### II. FACTUAL BACKGROUND.

Petitioner filed his habeas corpus Petition in August 2011, well after the 1996 effective date of the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT (AEDPA), Pub. L. No. 104-132, 110

Stat. 1214 (1996).  The provisions of AEDPA therefore apply to this case.  *Keith v. Mitchell*, 455 F. 3d 662, 665-666 (6th Cir. 2006) *cert. denied* 127 S. Ct. 1881 (2007) (*see Lindh v. Murphy*, 117 S. Ct. 2059, 2067 (1997); *Frazier v. Huffman*, 343 F.3d 780, 787 (6th Cir. 2003), *opinion altered on denial of reh'g*, 348 F.3d 174 (2003), *cert. denied*, 124 S. Ct. 2815 (2004)).

Under AEDPA, "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  *Id.* (*citing* 28 U.S.C. § 2254(e)(1)).  The following are the uncontroverted facts presented at trial:

In this case, the victim, H. R. was Petitioner's stepdaughter.  HR testified at trial that Petitioner moved into her home when she was seven years old, but she had known him from the age of two (Tr., pp. 242–243.)  H.R. testified that Petitioner began comparing her body to her mother's body when she was ten years old, but that she did not believe that he ever touched her inappropriately when she was ten. (Tr., p. 246.)

According to H.R.'s testimony, Petitioner began touching her breasts and buttocks "over top [of her] clothes" by the time she was in the fifth or sixth grade. (Tr., p. 246.)  He also began walking into the bathroom while she was taking a shower, as well as touching her under her clothes.  She testified that he began touching her under her clothes when she was "around" ten or eleven. (Tr., p. 247.) At twelve, H.R. performed oral sex on Petitioner, which occurred more than 50 times by her sixteenth birthday. (Tr., pp. 247, 249.)  Petitioner also performed oral sex on H.R. (Tr., p. 249.)  At thirteen, he began penetrating her vaginally and anally with his fingers. (Tr., pp. 248–249.)

H.R. testified that Petitioner would coerce her into performing sex acts by telling her that she "owe[d]" him. (Tr., p. 251.)  She interpreted the statement, "you owe me," which he said more than once a week, to mean that she would have to perform a sex act in exchange for "getting something materialistic from the store or going somewhere." (Tr., p. 251.)  H.R. further testified that her mother typically handed down the punishment for bad behavior, and that Petitioner would get the punishments lifted in exchange for sex acts. (Tr., p. 255.)

The abuse continued with regularity until H.R. began dating Elmer Gonzalez when she was fifteen. (Tr., p. 250.)  She testified that the abuse "faded out" because she was never home. According to her testimony, H.R. performed sex acts with Petitioner monthly after she started dating Gonzalez, and that she performed approximately two sex acts with Petitioner during the summer following her freshman year of high school. (Tr., p. 252.)

H.R. realized that she was the victim of sexual abuse when she watched an episode of "The Oprah Winfrey Show" that focused on child molestation. She testified that guests on the show described sex acts in which she had engaged with Petitioner. (Tr., p. 254.) H.R. conceded that she had a strained relationship with her mother, and felt much closer to Petitioner, and that she was afraid to tell her mother about the abuse. (Tr., pp. 254–255.)

H.R. told Gonzalez about the molestation in December of 2006, and he encouraged H.R. to tell her mother. (Tr., p. 256.) Although H.R. was reluctant to tell her mother, she finally divulged the information in April of 2007. H.R. and her mother were watching a prime time news program about child molestation, and H.R.'s mother asked if H.R. would confide in her if H.R. was being abused. H.R. dissolved into tears and disclosed the abuse. (Tr., p. 257.)

In addition to her testimony regarding the sex acts, H.R. testified that Petitioner took her shopping when she was thirteen and bought her a bikini and "G-string underwear." (Tr., pp. 259–260.) On one occasion, when H.R. was thirteen or fourteen, Petitioner plied her with alcohol, and H.R. woke up the following day naked in her bed with no recollection of the events of the previous evening. Petitioner was naked beside her. (Tr., pp. 262–263.) H.R. identified a scar near Petitioner's groin in order to prove that she had seen him naked.

*State v. Skidmore,* 2010 WL 2501219, *1-2 (2010).

## III. PROCEDURAL BACKGROUND.

### A. INDICTMENT.

On November 29, 2007, Petitioner was indicted by a Mahoning County Grand Jury on the

following:

| | |
|---|---|
| COUNTS 1, 2 & 3 | Rape, a violation of OHIO REV. CODE § 2907.02(A)(1)(b)(B)[1], a felony punishable by life imprisonment. |
| COUNTS 4, 5 & 6 | Rape, a violation of OHIO REV. CODE § 2907.02(A)(2)(B)[2], a felony of the first degree. |
| COUNT 7, 8 & 9 | Gross Sexual Imposition, a violation of OHIO REV. Code § |

---

[1]

No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when the other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

[2]

No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

          2907.05(A)(4)(B)[3], a felony of the third degree.

COUNTS 10, 11 & 12  Gross Sexual Imposition, a violation of OHIO REV. CODE § 2907.05(A)(1)(B)[4], a felony of the fourth degree.

(Docket No. 7, Attachment 1, pp. 1-4 of 4).

**B.**    TRIAL.

On June 5, 2008, a jury returned the following verdict:

COUNTS 1 and 2 (rape); 7 and 8 (gross sexual imposition)    Not guilty.
COUNTS 3, 4, 5, and 6 (rape); 9, 10, 11 and 12 (gross sexual imposition    Guilty.

(Docket No. 7, Attachment 9, pp. 1-5 of 5).

**C.**    SENTENCES.

On August 5, 2008, the court ordered as follows:

| | |
|---|---|
| COUNT 3 | Ten years to life. |
| COUNT 4 | Seven years in prison. |
| COUNT 5 | Seven years in prison. |
| COUNT 6 | Seven years in prison. |
| COUNT 9 | Three years in prison. |
| COUNT 10 | Eighteen months in prison. |
| COUNT 11 | Eighteen months in prison. |
| COUNT 12 | Eighteen months in prison. |

---

[3]

No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when the other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person. No person shall knowingly touch the genitalia of another, when the touching is not through clothing, the other person is less than twelve years of age, whether or not the offender knows the age of that person, and the touching is done with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

[4]

No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when the offender purposely compels the other person, or one of the other persons, to submit by force or threat of force. No person shall knowingly touch the genitalia of another, when the touching is not through clothing, the other person is less than twelve years of age, whether or not the offender knows the age of that person, and the touching is done with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

4

The sentences for COUNTS 4, 5 and 6 shall be served consecutively to one another and consecutively to the sentence imposed in COUNT 3.  The sentence in COUNT 9 shall be served concurrently to the sentences imposed on COUNTS 4, 5, and 6 and consecutively to the sentence imposed on Count 3.  The sentences imposed in COUNTS 10, 11 and 12 shall be served concurrently to each other and consecutively to the sentence imposed in COUNT 9.

The aggregate sentence was thirty-one years to life.  Should Petitioner be granted parole, his sentence shall be followed by a period of post-release control of five years.  Petitioner was classified as a Tier III Sexual Offender as defined in OHIO REV. CODE § 2950.01 (Docket No. 7, Attachment 10, pp. 1-4 of 4).

D.    **THE DIRECT APPEAL.**

Petitioner filed an appropriate notice appealing the conviction in the Seventh District Court of Appeals on August 19, 2008 (Docket No. 7, Attachment 12, pp. 1-12 of 12).  On April 17, 2009, Petitioner presented five assignments of error:

1.    It was an abuse of discretion for the trial court to permit testimony offered solely to bolster the credibility of the complaining witness, a violation of Petitioner's right to due process under the Fourteenth Amendment of the UNITED STATES CONSTITUTION and the OHIO CONSTITUTION, art. I, §16.

2.    Petitioner was denied due process and a fair trial by reason of improper prosecutorial argument.

3.    The trial court lacked authority to try Petitioner on COUNTS 7, 8 and 9 of the indictment as these COUNTS failed to state an offense in violation of the UNITED STATES CONSTITUTION, amend. XIV and OHIO CONST., art. I, §10.23.

4.    Petitioner's convictions and sentences are in violation of the state and federal constitutions because Petitioner was denied the effective assistance of counsel when counsel failed to object to prejudicial arguments.

5.    The trial court denied Petitioner due process under the Fourteenth Amendment in that his conviction was against the manifest weight of the evidence and the jury's verdict was inconsistent with the evidence and testimony presented.

(Docket No. 7, Attachment 13, pp. 2-3 of 48).

On June 18, 2010, the Court of Appeals released a decision which overruled all of Petitioner's assignments of error and affirmed the conviction (Docket No. 7, Attachment 16, pp. 1-24 of 24).

**E.      APPEAL TO THE SUPREME COURT OF OHIO.**

On August 2, 2010, Petitioner filed a notice of appeal in the Supreme Court of Ohio (Docket No. 7, Attachment 17, pp. 1-3 of 3).  In the memorandum in support of jurisdiction, Petitioner presented two propositions of law and arguments:

1.      The prosecutor committed misconduct and denied Petitioner due process and a fair trial by introducing facts not in evidence to bolster a witness' credibility, making improper remarks in closing, and displaying items to the jury that were properly excluded from the evidence.
2.      Petitioner was deprived of the effective assistance of counsel when his trial counsel failed to object to multiple instances of prosecutorial misconduct.

(Docket No. 7, Attachment 18, pp. 1-9 of 34).

Chief Justice Eric Brown determined on October 13, 2010, that Petitioner's appeal did not involve a substantial constitutional question.  Petitioner was denied leave to appeal (Docket No. 7, Attachment 20, p. 2 of 2).

**F.      RULE 26(B) APPLICATION TO REOPEN APPEAL.**

On September 1, 2010, Petitioner requested reconsideration of his claim that appellate counsel's representation was ineffective because counsel failed to object to the lack of sufficient evidence in the court of appeals (Docket No. 7, Attachment 21, pp. 1-9 of 58).  The court of appeals denied the application to reopen on December 2, 2010, finding that there was sufficient evidence to find Petitioner guilty of rape and gross sexual imposition during the victim's fourteen and fifteen years and that Petitioner did not establish an ineffective assistance of counsel claim (Docket No. 7, Attachment 23, p. 1-6 of 6).

6

On January 14, 2011, Petitioner filed a notice of appeal in the Supreme Court of Ohio (Docket No. 7, Attachment 24, pp. 1-3 of 3).  In the memorandum in support of jurisdiction, Petitioner presented two propositions of law:

1.      A criminal defendant is denied constitutionally guaranteed due process when he or she is convicted of multiple counts against the sufficiency of the evidence, when those counts are supported only by vague and ambiguous testimony.

2.      Appellate counsel provides constitutionally ineffective assistance in failing to raise the sufficiency of evidence when the State failed to present sufficient evidence to support each conviction.

(Docket No. 7, Attachment 25, p. 2 of 18).

On March 16, 2011, Chief Justice Maureen O'Connor dismissed the appeal as not involving any substantial question (Docket No. 7, Attachment 27, p. 1 of 1).

**G.      PETITION FOR WRIT OF HABEAS CORPUS.**

Petitioner filed a Petition for a Writ of Habeas Corpus pursuant to 28 U. S. C. § 2254 on August 22, 2011.  Petitioner seeks relief on four grounds which he supplemented with his own conclusions of fact:

First, Petitioner was denied due process of law and a fair trial by multiple instances of prosecutorial misconduct in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

Supporting Facts:

(1)     The prosecutor introduced and relied on prejudicial facts that were not made part of the record.
(2)     The prosecutor published inflammatory, inadmissible evidence to the jury, specifically, revealing clothing purportedly purchased by Petitioner for the victim.
(3)     The prosecutor remarked on her personal belief that Petitioner was guilty.

Second, Petitioner was denied the effective assistance of trial counsel when counsel failed to object to numerous instances of prosecutorial misconduct, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

Supporting Facts:

(1)     Trial counsel failed to object to the prosecutor's misconduct as enumerated in ground one above.
(2)     The repeated acts of prosecutorial misconduct warranted a curative instruction to the jury.

Third, Petitioner was denied constitutionally guaranteed due process when he was convicted of multiple counts against the sufficiency of the evidence, in violation of the Fifth and Fourteenth Amendments.

Supporting Facts:

(1)     There was insufficient evidence to convict Petitioner of COUNTS five and six, particularly since the victim did not testify that Petitioner raped her when she was fourteen or fifteen years of age.
(2)     There was insufficient evidence to convict Petitioner of COUNTS eleven and twelve because the victim did not testify that Petitioner had sexual contact with her during ages fourteen and fifteen.

Fourth, Petitioner was denied the effective assistance of appellate counsel who failed to raise the insufficiency of the evidence on direct appeal, in violation of the Fourteenth Amendment to the United States Constitution.

Supporting Facts:

(1)     Counsel failed to raise the sufficiency of the evidence argument on appeal.
(2)     Counsel's failure to raise this issue on appeal prejudiced Petitioner because it was a winning appellate argument

(Docket No. 1).

.

8

### IV.  HABEAS STANDARD OF REVIEW.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Balderson v. Miller,* 2012 WL 1344377, *8 (N. D. Ohio 2012) *adopted by*, 2012 WL 1322373 (N. D. Ohio 2012) (*citing* 28 U.S.C. § 2254(d)).  The controlling AEDPA provision states that a decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Id.* (*citing Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) *cert. denied* 132 S. Ct. 1743 (2012) (*quoting Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000)).  A state court's adjudication only results in an "unreasonable application" of clearly established federal law when the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id.* (*citing Otte,* 654 F. 3d at 599–600; *quoting Williams*, 120 S. Ct. at 1523).

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (*citing Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (*quoting Harrington v. Richter*, 131 S. Ct. 770, 786–787 (2011)).  This bar is

9

"difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Richter*, 131 S. Ct. at 786; *quoting Jackson v. Virginia*, 99 S. Ct. 2781, 2785, n. 5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (*quoting Yarborough v. Alvarado*, 124 S. Ct. 2140, 2148 (2004)). The petitioner carries the burden of proof. *Id.* (*citing Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011)).

### V. PROCEDURAL REVIEW.

Federal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts. *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (*citing Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). In determining whether a petitioner has fairly presented a federal constitutional claim to the state courts, a habeas court may consider whether (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law. *Id.* (*see Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir. 2004) *cert. denied* 125 S. Ct. 1653 (2005) (*citing McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) *cert. denied* 121 S. Ct. 1487 (2000)).

A state prisoner must exhaust his state remedies before bringing his claim in a federal habeas corpus proceeding. *Drummond v. Houk,* 761 F. Supp. 2d 638, 662 (N. D. Ohio 2010) (*citing* 28 U.S.C. § 2254(b), (c); *see Rose v. Lundy*, 102 S. Ct. 1198, 1205 (1982)). Exhaustion is fulfilled once

a convicted defendant seeks review of his or her claims on the merits from a state supreme court. *Id.* (*citing O'Sullivan v. Boerckel*, 119 S. Ct. 1728, 1732 (1999)).  A habeas petitioner satisfies the exhaustion requirement when the highest court in the state in which the petitioner has been convicted has had a full and fair opportunity to rule on the claims.  *Id.* (*citing Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (*citing Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990)).  If, under state law, there remains a remedy that a petitioner has not yet pursued, exhaustion has not occurred, and the federal habeas court cannot entertain the merits of the claim.  *Id.* (*see Rust, supra*).

A petitioner "'cannot obtain federal habeas relief under 28 U.S.C. § 2254 unless he has completely exhausted his available state court remedies to the state's highest court.' "  *Id.* at 663 (*citing Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (*quoting Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001) *cert. denied* 122 S. Ct. 405 (2001)).  In circumstances where the petitioner has failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim.  *Id.* (*see Buell, supra*, 274 F.3d at 34).  To obtain a merit review of the claim, the petitioner must demonstrate cause and prejudice to excuse his failure to raise the claim in state court, or that a miscarriage of justice would occur were the habeas court to refuse to address the claim on its merits.  *Id.* (*citing Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000) *cert. denied* 121 S. Ct. 1643 (2001) (*citing Wainwright v. Sykes,* 97 S. Ct. 2497, 2506 (1977)).

Petitioner's first, second and fourth claims were presented on direct appeal and to the Supreme Court of Ohio.  Consequently, those claims have been  adequately preserved for habeas review.  Petitioner concedes that the third claim was never presented on direct appeal to the trial court or to the Supreme Court of Ohio.  However, the third claim was presented in the RULE 26

application to the appellate court and in the appeal of the denial of the RULE 26 application to the Supreme Court of Ohio.

## VI. ANALYSIS OF PROSECUTORIAL MISCONDUCT CLAIMS.

Petitioner argues that he was denied due process of law and a fair trial because the prosecutor (1) introduced and relied on prejudicial facts that were not part of the record; (2) published Petitioner's purchase of revealing clothing for the victim to the jury, and (3) remarked that in her personal opinion, Petitioner was guilty.

The Sixth Circuit of Appeals employs a two-part test to determine whether prosecutorial misconduct requires a new trial. *Cristini v. McKee*, 526 F.3d 888, 899 (6th Cir. 2008) *cert. denied* 129 S. Ct. 1991 (2009) (*citing Girts v. Yanai*, 501 F.3d 743, 758-59 (6th Cir. 2007)).  First, the court must consider whether the prosecutor's conduct and remarks were improper.  Second, the court must consider and weigh four factors in determining whether the impropriety was flagrant and thus warrants reversal.  *Id.* (*citing United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001) (*citing United States v. Carroll*, 26 F.3d 1380, 1387 (6th Cir. 1994)).  Those four factors are:

(1)  whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant;
(2)  whether the conduct or remarks were isolated or extensive;
(3)  whether the remarks were deliberately or accidentally made; and
(4)  whether the evidence against the defendant was strong.

*Id*. (*citing Carroll*, 26 F.3d at 1385); *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000)).  When considering challenges to a prosecutor's statements at trial, the court will examine those statements within the context of the trial to determine whether they were prejudicial error.  *Id.* (*citing Girts*, 501 F.3d at 759).

1.    FACTS THAT WERE NOT PART OF THE RECORD

Without question, the prosecutor made a statement which implied that the victim's testimony was corroborated by evidence known to the prosecutor but not known to the jury.  The prosecutor bolstered the victim's credibility by telling the jury during closing that the victim's testimony was credible since she gave the same accounting of events to her mother, her boyfriend, the Children Services Board (CSB), the police and the prosecutor.  The State did not introduce into evidence the statements given to the victim's mother, boyfriend, CSB, the police or the prosecutor or evidence as to whether the statements were consistent with each other.

The Magistrate finds that the prosecutor's statement made during rebuttal of the State's closing argument, was improper.  Nevertheless, there is no evidence that the prosecutor intended to mislead the jury by making this isolated remark.  The prosecutor's animated closing was deliberately focused on convincing the jury that the victim, a child, was truthful in her assertions of the abuse and that her allegations could be corroborated by her admissions to her confidants and other professionals (Docket No. 7, Attachment 35, pp. 128-130).  The testimony presented by the victim was persuasive and the jury was instructed that closing arguments were not evidence.  Examining this statement within the context of the entire trial, the prosecution's comment does not rise to a level of prejudicial error that was sufficiently flagrant to violate Petitioner's due process rights.

2.    THE VICTIM'S CLOTHING.

Petitioner suggests that the prosecutor infected the outcome of the trial by showing a G-string and other provocative clothing that were purportedly purchased by Petitioner for the victim while she was twelve and/or thirteen years of age.

During the trial the victim identified the G-string and other clothing as gifts from Petitioner in return for sexual contact.  Without an objection, the trial court permitted the victim to discuss the

13

purchases.  On cross-examination of the victim, defense counsel suggested that the clothing she presented to the prosecutor had not been presented to investigators in 2007 and she could not prove that the items shown were purchased for her by Petitioner.  The trial court denied admission of the clothing into evidence and instructed the jury that direct evidence included exhibits admitted into evidence during the trial (Docket No. 7, Attachment 34, pp. 128-130 of 166; Docket No. 7, Attachment 35, pp. 72, 96-98 of 183).

The Magistrate finds that the prosecutor's reference to the bikini during closing argument was a reference to evidence the jury had seen during the victim's testimony.  The trial court overruled defense counsel's objection to the prosecutor's designation of the bikini to the jurors during closing argument.  Considering this isolated reference in the closing argument in the context of the entire trial, the reference was not so exceptionally flagrant that it constituted prejudicial error.

3.    THE PROSECUTOR'S PERSONAL OPINION.

The trial transcript shows that in opening and closing, the prosecutor said:

"We didn't drag a citizen in here and charge him willy-nilly.  We dragged a child molester in here so you could find him guilty.  Thank you."

(Docket No. 7, Attachment 35, p. 132 of 183).

Petitioner claims that the jury construed this comment as substantive evidence of his guilt.

In general, "it is improper for a prosecuting attorney in a criminal case to state his personal opinion concerning the credibility of witnesses or the guilt of a defendant." *Hall v. Vasbinder,* 563 F.3d 222, 235 (6th Cir. 2009) (*citing Byrd v. Collins*, 209 F.3d 486, 537 (6th Cir. 2000) (internal quotation marks omitted, *cert denied*, 121 S. Ct. 786 (2001)).  In *United States v. Young*, 105 S. Ct. 1038, 1044 (1985), the Supreme Court identified two dangers from a prosecutor's personal opinion about a defendant's guilt:

14

[S]uch comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*Id.* (*citing Young*, 105 S. Ct. at 1047) (*citing Berger v. United States*, 55 S. Ct. 629, 633 (1935)).

The Magistrate acknowledges that the prosecutor's negative classification of Petitioner as a child molester probably exceeded the bounds of proper comments. With that said, the prosecutor's characterization of Petitioner as a child molester in the context of the closing argument does not intimate a personal opinion as to Petitioner's guilt but implores the jury to find Petitioner guilty. Petitioner has not demonstrated that in a case where he was charged with crimes of rape and sexual abuse of a child, he suffered prejudice when the prosecutor made reference to this classification in the opening and closing arguments. Considering the nature and scope of its delivery, Petitioner has failed to show that the prosecutor's unflattering classification prejudiced the jury and prevented a fair trial.

**VII. ANALYSIS OF PETITIONER'S INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIM.**

Petitioner contends that he was denied the effective assistance of trial counsel. In support he focuses on trial counsel's failure to object to the introduction of prejudicial facts that were not made part of the record; the publishing of revealing clothing purportedly purchased by Petitioner for the victim to the jury and the prosecutor's remark that Petitioner was guilty.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Martin v. Mitchell*, 280 F.3d 594, 607 (6th Cir. 2002) *cert. denied*, 123 S. Ct. 2601 (2003) (*citing Strickland v. Washington*, 104 S. Ct. 2052, 2062 (1984)). First, the

defendant must show that counsel's performance was deficient. *Id.* This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id.* Second, the defendant must show that the deficient performance prejudiced the defense. *Id.* This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.* (*citing Strickland,* 104 S. Ct. at 2064).

Under *Strickland,* "counsel's tactical decisions are particularly difficult to attack." *Darrah v. Warden, Madison Correctional Institution,* 2012 WL 34102, *15 (S. D. Ohio 2012) *adopted by* 2012 WL 1574802 (S. D. Ohio 2012) (*citing O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994)). Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time the conduct occurred. *Id.* (*citing Strickland*, 104 S. Ct. at 2065). Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance, and a petitioner in habeas corpus "must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy." *Id*

Petitioner's counsel registered a contemporaneous objection to the revelation of provocative clothing and obtained a favorable ruling to exclude the clothing.  The Magistrate confirms that upon review of the transcribed record, counsel did not object to the prosecutor's indirect reference to the victim's credibility or the insinuation that Petitioner was guilty.  However, Petitioner will not have the opportunity to show that counsel's performance fell below the objective standards of attorney conduct because he has not overcome *Strickland's* strategic presumption.  In particular, Petitioner failed to engage in record-based speculation as to what the strategy was, show that trial counsel's

16

failure to object was part of a strategy and show that the strategy to refrain from objecting during closing argument was unsound.  In light of all the circumstances, the Magistrate finds that the identified acts or omissions were not outside the wide range of professionally competent assistance.

### VIII. ANALYSIS OF THE SUFFICIENCY OF EVIDENCE CLAIM.

Petitioner argues that he was denied constitutionally guaranteed due process when he was convicted of multiple counts against the sufficiency of the evidence, in violation of the Fifth and Fourteenth Amendments.

Any review of habeas due process claims based on improper admission of evidence must be cognizant of the Supreme Court's mandate that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Ege v. Yukins,* 485 F.3d 364, 375 (6th Cir. 2007) (*citing Estelle v. McGuire*, 112 S. Ct. 475, 480 (1991))  Under this very deferential standard, due process is violated, and thus habeas relief warranted, only if an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness."  *Id.* (*citing Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) *cert. denied* 124 S. Ct. 345 (2003)).  "Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor."  *Id.* (*citing Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000) *cert. denied* 121 S. Ct. 1744 (2001)).

In a criminal trial, the prosecution bears the burden of proving all elements of the offense charged, *Sullivan v. Louisiana*, 113 S. Ct. 2078, 2080 (1993) (*e.g. Patterson v. New York*, 97 S. Ct. 2319, 2327 (1977); *Leland v. Oregon*, 72 S. Ct. 1002, 1005 (1952)), and must persuade the factfinder beyond a reasonable doubt of the facts necessary to establish each of those elements.  *Id.* (*e.g., In re Winship*, 90 S. Ct. 1068, 1072 (1970); *Cool v. United States*, 93 S. Ct. 354, 357 (1972) (*per curiam*)).  The constitutional standard for reviewing the sufficiency of the evidence was

17

established in *Jackson v. Virginia*, 99 S. Ct. 2781 (1979).  *Scott v. Perini*, 662 F.2d 428, 431 (6th Cir. 1981) *cert. denied*, 102 S. Ct. 1758 (1982).  There, Justice Stewart held that the relevant question was whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.* A conviction with insufficient evidence violates the defendant's federal due process rights.  *White v. Steele,* 602 F.3d 707, 709 (6th Cir. 2009) (*citing Jackson*, *supra*, 99 S. Ct. at 2787).   The prosecution lacks an "affirmative duty to rule out every hypothesis except that of guilty beyond a reasonable doubt . . . " *Id.* (*citing Jackson*, *supra*, 99 S. Ct. at 2792-2793).  Thus, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Id.* at 709-710.

When reviewing habeas claims by a state prisoner, this Court may not reinterpret state law or reconsider the sufficiency of the evidence presented to the jury to sustain the charges on which Petitioner was convicted.  Viewed in a light most favorable to the prosecution, the Magistrate concludes that a rational trier of fact could have found the essential elements of rape and gross sexual imposition beyond a reasonable doubt.  Generally speaking, this federal habeas corpus is not the proper vehicle for Petitioner to seek review of whether there was substantial evidence on which to base a conviction.

### IX. ANALYSIS OF THE INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL CLAIM.

Petitioner claims that counsel on appeal performed deficiently by failing to raise a constitutional challenge to the sufficiency of the evidence against him.  He urges that his appellate counsel failed to pursue a foolproof winner.

18

The failure of appellate counsel to assert claims on appeal cannot rise to the level of denial of a constitutional right unless such failure was so ill-advised as to have caused petitioner to effectively have been without counsel. *Burton v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004) *cert. denied* 126 S. Ct. 353 (2004). A petitioner asserting appellate counsel's failure to raise un-asserted claims will not be able to establish such a showing even if the un-asserted claims are deemed not to have been frivolous. *Id.* As a practical matter, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome. *Smith v. Robbins*, 120 S. Ct. 746, 765 (2000).

A petitioner cannot succeed on a claim of ineffective assistance of appellate counsel by reason of failure to raise a particular assignment of error on appeal, unless there is a reasonable probability that such assignment of error would have succeeded at the time that counsel failed to raise it. *McFarland v. Yukins*, 356 F.3d 688, 699–700 (6th Cir. 2004). When appellate counsel fails to raise a claim lacking in merit, that failure cannot amount to ineffective assistance of appellate counsel. *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003). In order to be successful on a claim of ineffective assistance of appellate counsel, a petitioner must demonstrate that but for appellate counsel's deficient performance, there is a reasonable probability that he or she would have prevailed on appeal. *Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir. 2004).

In isolation, it seems that a sufficiency of the evidence argument would be appropriate considering the prosecution's misconduct. Yet Petitioner has failed to demonstrate that there was a reasonable probability of success on the merits at the time counsel failed to raise the issue. Petitioner suggested, but failed to show, that but for appellate counsel's deficient performance, there is a reasonable probability that he would have prevailed on appeal and the outcome would have been different. In sum, Petitioner is not entitled to habeas relief on his ineffective assistance of appellate

counsel claim for the reason that he failed to show that appellate counsel's omission prejudicially affected the outcome of the appeal.

## IX. CONCLUSION.

For these reasons, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus and terminate the referral to the undersigned Magistrate Judge.


/s/Vernelis K. Armstrong
United States Magistrate Judge


Date:          July 23, 2012

## X. NOTICE

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985),

the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on

the filing of timely objections to a report and recommendation.